**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

**ROSE MARY KNICK**,

Plaintiff,

v.

**SCOTT TOWNSHIP, et al.**,

Defendants.

CIVIL ACTION NO. 3:14- CV-2223

(JUDGE CAPUTO)

## MEMORANDUM

Presently before the Court is a Motion to Dismiss Plaintiff's Amended Complaint (Doc. 10.) filed by Defendants Scott Township and Carl Ferraro ("Ferraro"), individually and in his official capacity as Code Enforcement Officer of Scott Township. According to Plaintiff, Ms. Rose Mary Knick ("Ms. Knick"), Scott Township and Ferraro violated her constitutional rights through enactment and enforcement of a township ordinance addressing the operation and maintenance of cemeteries and burial grounds within Scott Township. As such, Plaintiff commenced this action asserting four (4) claims under 42 U.S.C. § 1983 and one (1) claim for relief pursuant to the Declaratory Judgment Act, seeking both declarative and injunctive relief.  Defendants seek dismissal of the Amended Complaint in its entirety under Federal Rule of Civil Procedure 12(b)(6). Because Plaintiff has failed to adequately state claims for violations of her constitutional rights under § 1983, the motion to dismiss Counts I through IV shall be granted. Because Ms. Knick's request for a declaratory judgment would serve no purpose in the current action, the motion to dismiss Count V will be granted.

## I. Background

The facts as alleged in the Amended Complaint (Doc. 9.) are as follows:

Rose Mary Knick is a resident of Scott Township, Pennsylvania. *(Am. Compl.*, ¶ 5.) Scott Township is a political subdivision of the Commonwealth of Pennsylvania, organized

and designated as a Township of the Second Class. (*Id*. at ¶ 6.) Carl Ferraro was the Code Enforcement Officer of Scott Township and a resident of the Commonwealth of Pennsylvania. (*Id*. at ¶¶ 7-8.)

Ms. Knick owns approximately 90 acres of real estate, comprised of two parcels, located at 49 Country Club Road, in Scott Township, Pennsylvania. (*Id*. at ¶ 9.) The property has been continuously owned and occupied by Ms. Knick and her family members since 1970. (*Id*.) The property has been used as a primary residence, as well as farmland and grazing areas for horses, cattle and other farm animals. (*Id*.) There are "No Trespassing" signs placed at regular intervals and the property is bounded by stonewalls, fences and other boundary markers. (*Id*. at ¶ 10.)

Ms. Knick frequently attends meetings of the Scott Township Board of Supervisors ("Supervisors") and regularly confronts the Supervisors and administrative officials with respect to the expenditure of funds, tax revenue issues, and municipal decisions. (*Id*. at ¶ 11.)

In September 2008, at several public meetings and in response to a citizen inquiry, the Supervisors and the Township Solicitor discussed the alleged existence of an ancient burial ground on Ms. Knick's property. (*Id*. at ¶ 12.) In 2008 and early 2009, Ms. Knick, as well as her counsel at the time, made a Right-to-Know request of the Supervisors. (*Id*. at ¶ 13.) The request sought particulars regarding the suggestion that an ancient burial ground was on her property. (*Id*.) Ms. Knick and her counsel also advised the Supervisors that there was no designation in the chain of title to her property regarding a burial ground or cemetery and also that there was no physical evidence of the existence of a burial ground or cemetery. (*Id*.) Ms. Knick's attorney provided Scott Township, through their solicitor, a correspondence dated October 23, 2008, reiterating that there was no designation of a burial ground or cemetery in the chain of title nor any evidence of such on Ms. Knick's

2

property. (*Id*. at ¶ 14.)

From October 2008 through October 2012, Ms. Knick continued to attend Supervisor meetings and regularly confronted the Supervisors and administrative officials about the expenditure of funds, tax revenue issues, and various municipal decisions. (*Id*. at ¶ 15.) The Supervisors and administrative officials, including Ferraro, expressed their annoyance, aggravation, and displeasure, both publicly and privately, regarding Ms. Knick's exercise of her First Amendment Rights. (*Id*.)

In December 2012, the Supervisors enacted an ordinance, specifically Ordinance 12-12-20-001 ("Ordinance"). (*Id*. at ¶ 16.) The Ordinance addresses the operation and maintenance of cemeteries and burial grounds within Scott Township. (*Id*.) There were no complaints at the time with regard to any cemeteries in Scott Township. (*Id*.) The Supervisors determined the Ordinance would be applied to Ms. Knick and her property. (*Id*.)

On April 10, 2013, after a collective determination by the Supervisors, Ferraro entered on to Ms. Knick's property without permission and without an administrative warrant. (*Id*. at ¶ 18.) On April 11, 2013, Scott Township issued a Notice of Violation alleging that Ms. Knick's property existed in violation of the Ordinance. (*Id*. at ¶ 19.)

On May 7, 2013, Ms. Knick filed a complaint in the Lackawanna County Court of Common Pleas seeking declaratory and injunctive relief and requested that the court take the following actions: declare the Ordinance unconstitutional, void, ineffective and without force of law; declare that Scott Township is precluded from enforcing the Ordinance against Ms. Knick and decree the Notice of Violation nullified; grant equitable relief in the form of a Special Injunction preliminarily following a hearing, and permanently thereafter to preclude and enjoin Scott Township from enforcing the Ordinance; and grant other and appropriate relief, including awarding attorney's fees. (*Id*. at ¶ 20.) Ms. Knick, through counsel, provided Scott Township with notice regarding the presentation of an Emergency Motion for

Injunctive Relief on or about May 7, 2013. (*Id*. at ¶ 21.)  In response, the parties agreed and stipulated to an order as follows:

ORDER

  AND NOW, this 9th day of May, 2013, upon consideration of the Plaintiff's Emergency Motion for Injunctive Relief, Defendant Scott Township's agreement to withdraw its Notice of Violation dated April 11, 2013, and in accordance with a Stipulation of Counsel for the Parties, it is Hereby Ordered that all proceedings by Defendant Scott Township to enforce Ordinance No. 12-12-20-001 against Plaintiff Rose Mary Knick are stayed pending the resolution of the issues raised in the underlying Complaint seeking Declaratory and Injunctive Relief.

/s/ Nealon, J.

(*Id*.) A hearing was held on October 8, 2014 in the Lackawanna County Court. (*Id*. at ¶ 22.) Following the hearing, Judge John Braxton issued the following Order:

ORDER

  AND NOW, this 21st day of October 2014, upon consideration of the Plaintiff's Motion for Injunctive Relief/Declaratory Judgment, the applicable law, and argument before this court on the matter, it is hereby ORDERED AND DECREED that this court will render no decision on the matter.
  This court finds that it is not the proper venue for this matter, since the case is not in the proper posture for a decision to be rendered on the Plaintiff's requested forms of relief.

BY THE COURT:

Braxton    , SJ.
John Braxton

(*Id*.) On October 31, 2014, the Supervisors and Ferraro issued another Notice of Violation alleging Ms. Knick's noncompliance with the Ordinance. (*Id*. at ¶ 23.) Ms. Knick filed a Petition for Contempt of Court in the Lackawanna County Court of Common Pleas. (*Id* at ¶ 24.)  After a hearing, Judge Terrance Nealon denied the Petition for Contempt and entered a Memorandum and Order. (*Id*.) The Lackawanna County Court of Common Pleas has not addressed Ms. Knick's request for Declaratory Relief. (*Id*.)

  Ms. Knick initiated this action on November 20, 2014. (Doc. 1.)  In the original complaint, Ms. Knick alleged violations, under 42 U.S.C. § 1983, of her Fourth Amendment rights against Scott Township, both for maintaining a policy, practice, custom or procedure and for failing to or for inadequately training, or failing to adequately supervise or discipline

4

the Code Official. (Counts One and Two)  She also alleged violations of her Fourth and Fourteenth Amendment rights by Ferraro in his official and individual capacity under 42 U.S.C. § 1983. (Count Three) Ms. Knick alleged violations of her First, Fourth, Fifth, and Fourteenth Amendment rights under 42 U.S.C. § 1983 through Scott Township's enactment of the Ordinance (Count Four).  Defendants Scott Township and Ferraro filed a motion to dismiss. (Doc. 8.) Subsequently, Plaintiff filed an Amended Complaint asserting the four causes of action above with an additional claim. (Doc. 9.) Ms. Knick additionally requests relief pursuant to the Declaratory Judgment Act (Count Five). Ms. Knick requests a declaratory judgment  deeming the Ordinance unconstitutional. She also seeks a Temporary Restraining Order and Preliminary and Permanent Injunctive relief.  On March 2, 2015, Defendants filed a motion to dismiss the Amended Complaint. (Doc. 10.) On March 20, 2015, Ms. Knick filed a motion for an order for dismissal of Defendants' motion to dismiss  for failure to file a brief in support within twenty (20) days. (Doc. 11.) On March 20, 2015, Defendants filed a motion for leave to file a reply brief *nunc pro tunc*. (Doc. 12.) An order was issued granting leave to file *nunc pro tunc*. (Doc. 13.) Defendants filed a brief in support of their motion to dismiss on March 31, 2015. (Doc. 14.) Ms. Knick filed a brief in opposition on April 14, 2015. (Doc. 15.) Defendants filed a reply brief on April 28, 2015. (Doc. 16.) The motion has been briefed and is ripe for review.

## II. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6).  When considering a Rule 12(b)(6) motion, the Court's role is limited to determining if a plaintiff is entitled to offer evidence in support of their claims. *See Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir. 2000).  The Court does not consider whether a plaintiff will ultimately prevail. *See id.*  A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *See Gould Elecs. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The statement required by Rule 8(a)(2) must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). Detailed factual allegations are not required. *Twombly*, 550 U.S. at 555, 127 S. Ct. 1955. However, mere conclusory statements will not do; "a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Instead, a complaint must "show" this entitlement by alleging sufficient facts. *Id*. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009). As such, "[t]he touchstone of the pleading standard is plausibility." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

The inquiry at the motion to dismiss stage is "normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, 127 S. Ct. 1955, meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element. *Phillips v. Cty of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556, 127 S. Ct. 1955). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556

U.S. at 678, 129 S. Ct. 1937. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679, 129 S. Ct. 1937.

In deciding a motion to dismiss, the Court should consider the complaint, exhibits attached to the complaint, and matters of public record. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). The Court may also consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss. *Pension Benefit Guar.*, 998 F.2d at 1196. The Court need not assume the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 & n.13 (3d Cir. 1998), or credit a complaint's "'bald assertions'" or "'legal conclusions.'" *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429–30 (3d Cir. 1997)).

### III. Discussion

Defendants seek to dismiss Ms. Knick's Amended Complaint in its entirety for failure to state a claim upon which relief can be granted.  The Court will address the sufficiency of each count of Ms. Knick's Amended Complaint below.

### A.    Stay/Dismissal

Preliminarily, Defendants ask that I consider dismissal or a stay of the current action pending the outcome of the Ms. Knick's ongoing suit filed in the Lackawanna County Court of Common Pleas (Doc. 10 at ¶ 53; Doc. 14, 3-4.), asserting that Ms. Knick is "estopped from pursuing this matter since she is currently litigating a previously filed state court action." (Doc. 10 at ¶ 53.) It is settled that this Court's ability to stay an action is "incidental" to the Court's "inherent power," *Landis v. North Am. Co.,* 299 U.S. 248, 57 S.Ct. 163, 81 L.Ed. 153

(1936), and that motions seeking a stay are addressed in the court's discretion. *Bechtel v. Local 215 Laborers' Int'l Union,* 544 F.2d 1207, 1215 (3d Cir.1976).  In *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 496, 62 S. Ct. 1173, 1176, 86 L. Ed. 1620 (1942), the Supreme Court addressed the scenario where a request for a federal declaratory judgment was filed while an action was pending in state court presenting the same issues and involving the same parties. The Court set forth that the district court should consider the following when determining whether to exercise jurisdiction:

> Where a district court is presented with a claim such as was made here[1], it should ascertain whether the questions in controversy between the parties to the federal suit, and which are not foreclosed under the applicable substantive law, can better be settled in the proceeding pending in the state court. This may entail inquiry into the scope of the pending state court proceeding and the nature of defenses open there. The federal court may have to consider whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding, whether necessary parties have been joined, whether such parties are amenable to process in that proceeding, etc.

*Brillhart,* 316 U.S. at 495, 62 S. Ct. at 1176. The resulting standard from *Brillhart* was a discretionary standard. Following *Brillhart,* the Supreme Court decided, among other cases, *Colorado River Water Conservation Dist. v. United States*, 316 U.S. 491, 62 S. Ct. 1173, 96 S. Ct. 1236 (1976) and *Moses H. Cone Memorial Hospital v. Mercury Contr. Corp.*, 460 U.S. 1, 103 S. Ct. 9927, 74 L.Ed.2d 765 (1983). Both cases set forth that a court should decline to exercise jurisdiction only where exceptional circumstances are present, articulating a non-exhaustive list of factors for consideration. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 283-87, 115 S. Ct. 2137, 2141-42, 132 L.Ed.ed 214 (1995)(citing same). The Court later sought to reconcile the prior cases and set forth in *Wilton,* that "[i]n the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields

---

[1]

The request for Declaratory Judgment in *Brillhart* was from an insurance company, requesting a determination of rights under a reinsurance agreement. *Id.* at 492, 1174 (remanding the case to the district court to conduct the discretionary inquiry the Court set forth).

to considerations of practicality and wise judicial administration." 515 U.S. at 288, 115 S. Ct. at 2143. However, the Court did not "attempt . . . to delineate the outer boundaries of that discretion in other cases, for example, cases raising issues of federal law or cases in which there are no parallel state proceedings." *Id.* at 290, 2144. Following *Wilton*, the circuits have taken several different approaches. The Second Circuit has stated that *Wilton* set forth that abstention would be appropriate "where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties," and "the questions in controversy ... can better be settled in the proceeding pending in the state court." *Niagara Mohawk Power Corp. v. Hudson River Black River Regulating Dist.*, 673 F.3d 84, 105-06 (2d Cir. 2012) (citing *Wilton,* 515 U.S. at 282, 115 S.Ct. 2137 (internal quotation marks omitted)(applying abstention criteria and finding abstention was improper because a judgment by the district court would settle the legal issues between the parties and finalize the controversy).   However, the Third Circuit has not definitively resolved the issue when an action involves claims requesting compensatory, economic and punitive remedies as well as injunctive and equitable relief.   This Court previously addressed a request for declaratory judgment in an insurance coverage case where injunctive relief was additionally requested and no federal issue was implicated. *Hartford Ins. Co. Of the Southeast v. John J.*, 848 F. Supp. 2d 506 (M.D.Pa 2012). I declined to exercise jurisdiction but adopted the "heart of the matter approach." *Id.* at 513.  Using the "heart of the matter approach", "a court will look to whether the nucleus of an action is declaratory or coercive[2], and will exercise jurisdiction over the whole if the core is coercive, and will exercise discretion as to both claims if it is declaratory." *Id.* at 511; *See Rarick v. Federated Service Insurance Company,* — F. Supp.

---

[2]

"Coercive" claims refer to those "seeking compensatory damages or injunctive relief." *Hartford Ins. Co.*,  848 F. Supp. at 511 n.1 (citing *Perelman v. Perelman,* 688 F.Supp.2d 367, 372 (E.D.Pa.2010).

3d —. 2015 WL 5677295 *4 (E.D. Pa. September 28, 2015)(applying the "heart of the matter" approach when both declaratory and coercive claims were involved).

In *Reifer v. Westport Ins. Corp.*, 751 D. 3d 129 (3d Cir. 2014), the Third Circuit set forth a two-part test for consideration when faced with a declaratory judgement request. First, a determination is to made whether there is are pending state court proceedings, *Id.* at 144, stating " the existence or non-existence of pending parallel state proceedings is but one factor for a district court to consider." *Id.* The second step involves exploring the following factors:

> 1. the likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy;
>
> 2. the convenience of the parties;
>
> 3. the public interest in settlement of the uncertainty of obligation;
>
> 4. the availability and relative convenience of other remedies;
>
> 5. a general policy of restraint when the same issues are pending in a state court;
>
> 6. avoidance of duplicative litigation;
>
> 7. prevention of the use of the declaratory action as a method of procedural fencing or as a means to provide another forum in a race for res judicata; and
>
> 8. (in the insurance context), an inherent conflict of interest between an insurer's duty to defend in a state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion.

*Id.* at 146. *See Nationwide Agribusiness Inc. Co. v. Sheriff*, 2015 WL 365679 (M.D. January 27, 2015) (applying the *Reifer* factors). The *Reifer* court stated that the list was non-exhaustive and "other relevant case law or considerations could be considered." *Reifer*, 751 D. 3d at 146. Guided by the above, Defendants' argument that the current action should be stayed pending the Lackawanna County Court of Common Pleas case will be addressed.

In her Amended Complaint, Ms. Knick has requested relief in the form of economic, compensatory, and punitive damages, as well as injunctive and equitable relief. The Amended Complaint alleges federal constitutional claims under 42 U.S.C. § 1983 in Counts I-IV. These claims fall under the jurisdiction of this Court as federal questions pursuant to 28

U.S.C. §§ 1331 and 1343. Count V is a claim for relief pursuant to the Declaratory Judgment Act. Declaratory Judgment actions do not fall under the same jurisdictional jurisprudence because relief is sought under is 28 U.S.C. §§ 2201-2202 and implemented through Rule 57 of the Federal Rules of Civil Procedure which states that the "existence of another adequate remedy does not preclude a declaratory judgment." Fed. R. Civ. P. 57.

Courts are constrained in the Declaratory Judgment context to only act in the face of cases or controversies. All "federal courts, '[have] no jurisdiction to pronounce any statute, either of a state or of the United States, void, because irreconcilable with the constitution, except as it is called upon to adjudge the legal rights of litigants in actual controversies." *United States v. Raines*, 362 U.S. 17, 21, 80 S. Ct. 519, 522, 4 L. Ed. 2d 524 (1960). Ms. Knick states that a controversy exists because she "has received from Defendant, Scott Township, Notice of Violation dated April 11, 2013 and October 31, 2014 and consequently her interest in these proceedings is direct, substantial and present and the Enforcement Action undertaken by Scott Township reveals an actual controversy related to the invasion of Plaintiff's constitutionally protected property rights." (*Am. Compl.,* ¶ 45.) Because Ms. Knick's claims in Count I through IV allege violations of her constitutional rights, a case or controversy exists.

In applying the above-factors, it would be inappropriate to stay or dismiss Counts I through IV based on the pending Lackawanna County Court action. The Memorandum and Order issued by the Honorable Terrance Nealon of the Lackawanna County Court appears to indicate that no decision has been rendered on the underlying action filed by Ms. Knick. *Knick v. Scott Township*, 13-CV-2309 (Lacka. Cty.) (Doc. 10-1.)[3]  The Defendants argued

---

[3]

Defendants attached a copy of the Memorandum and Order filed by Judge Terrance Nealon of Lackawanna County Court of Common Pleas, to their Motion to Dismiss (Doc. 10.). As a matter of public record, I can take the Memorandum and Order into consideration in deciding the instant motion. *See Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

at the state court level that the action by Ms. Knick was premature and that an attack to the underlying Ordinance had to wait until the Township chose to file civil enforcement proceedings against Ms. Knick. (Doc. 10-1, 15.) Ms. Knick's claims in the current case are premised on the alleged violations of her constitutional rights. Despite her request for a declaratory judgment, her claims in Counts I through V are controlled by federal law and were not a part of her state court filing. Therefore, it would be an abrogation of this Court's jurisdictional obligations to stay these proceedings pending the outcome of the state court action, especially because there is no clarity as to when those proceedings will conclude. Despite my determination to address Ms. Knick's claims in Counts I through IV, as discussed more fully below, I will decline to exercise jurisdiction over the declaratory judgment request and dismiss Count V without prejudice. Additionally, it should be noted that the state action is still pending with regard to Ms. Knick's request for declaratory judgment and injunctive and equitable relief.

### B.    Section 1983

Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected, any citizen . . . or other person . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured, . . ." 42 U.S.C. § 1983. "To establish liability under 42 U.S.C. § 1983, a plaintiff must show that the defendants, acting under color of law, violated the plaintiff's federal constitutional or statutory rights, and thereby caused the complained of injury." *Elmore v. Cleary*, 399 F.3d 279, 281 (3d Cir. 2005) (citing *Sameric Corp. of Del., Inc. v. City of Phila.*, 142 F.3d 582, 590 (3d Cir. 1998)). "[M]unicipalities and other local government units [are] to be included among those persons to whom § 1983 applies" and municipalities, "can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690-91, 98 S. Ct. 2018, 2035 36, 56 L. Ed. 2d

611 (1978). In *Monell*, the Supreme Court held that a municipality will not be found liable for the unconstitutional acts of a state actor unless the conduct that caused the harm was pursuant to a government policy, custom, or practice. 436 U.S. at 690–91, 98 S. Ct. 2018. Instead, a § 1983 claim against a municipality requires the plaintiff to: (1) identify a policy or custom that deprived him of a federally protected right; (2) demonstrate that the municipality, by its deliberate conduct, acted as the "moving force" behind the alleged deprivation; and (3) establish a direct causal link between the policy or custom and the plaintiff's injury. *Id.; See Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997).

### I.      Count I-Fourth Amendment Search

Ms. Knick's first claim alleges that Scott Township "maintain(s) a policy, practice, custom or procedure that its Code Enforcement Officer may effectuate warrantless entry onto the private property of citizens within Scott Township," leading to a warrantless entry onto Ms. Knick's property on April 10, 2013. (Doc. 9 at ¶ 26.) It has been previously determined that where a particular Amendment "provides an explicit textual source of constitutional protection" against a particular sort of government behavior, "that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Albright v. Oliver*, 510 U.S. 266, 273, 114 S. Ct. 807, 127 L. Ed.2d 114 (1994). The Fourth Amendment to the United States Constitution provides that:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. The Fourth Amendment, applied to the states through the Fourteenth Amendment, applies to state government officials in various capacities. *O'Connor v. Ortega,* 480 U.S. 709, 715, 107 S.Ct. 1492, 94 L.Ed.2d 714 (1987). The Supreme Court stated in *Michigan v. Tyler*, 436 U.S. 499, 504, 98 S. Ct. 1942, 1947, 56 L. Ed. 2d 486 (1978), that '[t]he decisions of this Court firmly establish that the Fourth Amendment extends beyond the

paradigmatic entry into a private dwelling by a law enforcement officer in search of the fruits or instrumentalities of crime." In *Camara v. Municipal Court of the City and Cty of San Francisco*, 387 U.S. 523, 87 S. Ct. 1727(1967), an apartment tenant challenged a complaint filed against him for disallowing entry to a municipal inspector attempting  to inspect the apartment for code compliance. The Court held that such searches, permitted under the challenged municipal law, *i.e*, warrantless inspection of a residence, "are significant intrusions upon the interests protected by the Fourth Amendment, [and] that such searches when authorized and conducted without a warrant procedure lack the traditional safeguards which the Fourth Amendment guarantees to the individual." *Id.* at 534, 1733. In *See v. City of Seattle*, 387 U.S. 541, 542,  87 S. Ct. 1737, 1739, 18 L. Ed. 2d 943 (1967), the Court reiterated the holding in *Camara* that "the Fourth Amendment bars prosecution of a person who has refused to permit a warrantless code-enforcement inspection of his personal residence" and extended *Camara*'s protections to commercial structures.

Turning to Ms. Knick's claim, a Fourth Amendment inquiry is a "two-part inquiry: first, has the individual manifested a subjective expectation of privacy in the object of the challenged search? Second, is society willing to recognize that expectation as reasonable?" *California v. Ciraolo*, 476 U.S. 207, 211, 106 S. Ct. 1809, 1811, 90 L. Ed. 2d 210 (1986)(citing *Katz v. U.S.*, 389 U.S. 347, 360, 88 S.Ct. 507, 516, 19 L.Ed.2d 576 (1967)*; Smith v. Maryland,* 442 U.S. 735, 740, 99 S.Ct. 2577, 2580, 61 L.Ed.2d 220 (1979)). It can not be disputed that Ms. Knick had a subjective expectation of privacy in her property. There were "No Trespassing" signs posted at intervals as well as stone walls and other natural boundaries surrounding her property. However, a Fourth Amendment violation also requires there be a recognized objective expectation of privacy. In *Oliver v. U.S*, 466 U.S. 170, 178, 104 S. Ct. 1735, 1741, 80 L. Ed. 2d 214 (1984), the Court reaffirmed that "an individual may not legitimately demand privacy for activities conducted out of doors, in fields, except in the

area immediately surrounding the home." (citing *Hester v. U.S.*, 265 U.S. 57, 44 S. Ct. 445, 68 L. Ed. 898 (1924)). Explaining further, the Court stated that:

> open fields do not provide the setting for those intimate activities that the Amendment is intended to shelter from government interference or surveillance. There is no societal interest in protecting the privacy of those activities, such as the cultivation of crops, that occur in open fields. Moreover, as a practical matter these lands usually are accessible to the public and the police in ways that a home, an office, or commercial structure would not be. It is not generally true that fences or "No Trespassing" signs effectively bar the public from viewing open fields in rural areas. . . For these reasons, the asserted expectation of privacy in open fields is not an expectation that "society recognizes as reasonable.

466 U.S. at 179. Therefore, a property owner should not have a reasonable expectation of privacy in open fields.

Defendants argue that Ms. Knick's Fourth Amendment unlawful search claim should be dismissed because the language of the ordinance provides: "[t]he Code Enforcement Officer and/or his/her agents and representatives may enter upon property within the Township for the purposes of determining the existence of and location of any cemetery, in order to ensure compliance with the terms and provisions of this Ordinance." (Doc. 14 at 7.) In countering Defendants' position, Ms. Knick relies solely on *Camara* in support of the claimed violation of her Fourth Amendment rights. (Doc. 15 at 6.) However, to place such reliance on the case is inappropriate. While *Camara* clearly provides protection for an individual in their home and *See* extends such protection to commercial structures, the area Ms. Knick states was subject to a search was the approximately ninety acres of land she owns, with no specifics as to the precise location. She does not state that there was entry into her home nor to the curtilage of her home. As addressed above, Scott Township can be held liable pursuant to § 1983 under *Monell* only where there was a direct link or nexus between the policy or custom of the municipality and a constitutional deprivation. Because Ms. Knick has not plead a claim upon which relief can be granted, namely she has not stated a constitutional deprivation under the Fourth Amendment, Scott Township can not be liable.

Ms. Knick fails to state a claim under the Fourth Amendment for an unconstitutional

search of her property and therefore, Count I shall be dismissed.

## II.     Count II-Fourth Amendment-Failure to Train

Defendants seek dismissal of Ms. Knick's failure to train claim against Scott Township. Ms. Knick alleges that by failing to train and/or "inadequately training its Code Official as to the law with regard to the necessity for obtaining an Administrative warrant prior to conducting an inspection of private property" Scott Township violated her "individually constitutionally protected rights." (*Am. Compl.*, ¶ 30.) Ms. Knick states the failure to train led to "a deliberate indifference to the Constitutional rights of the citizens of Scott Township, including Plaintiff." (*Id*. at ¶ 31.)

"[A] municipality's failure to properly train its employees and officers can create an actionable violation of a party's constitutional rights under § 1983." *Reitz v. County of Bucks*, 125 F.3d 139, 145 (3d Cir.1997) (citing *City of Canton v. Harris*, 489 U.S. 378, 388, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989)). "In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983.*" Connick v. Thompson*, 563 U.S. 51, 131 S. Ct. 1350, 1359, 179 L. Ed. 2d 417 (2011). Only where a municipality's failure to train its employees in a relevant respect evidences a "deliberate indifference" to the rights of its inhabitants can such a shortcoming be properly thought of as a city "policy or custom" that is actionable under § 1983. *City of Canton, Ohio v. Harris,* 489 U.S. 378, 389, 109 S. Ct. 1197, 1205, 103 L. Ed. 2d 412 (1989). "Failure to train . . . municipal employees can ordinarily be considered deliberate indifference only where the failure has caused a pattern of violations." *See Berg v. County of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000) (per curiam) (citing *Bd. of Cnty. Comm'rs*, 520 U.S. at 408-09). To attach liability to a municipality, the identified deficiency in the training program must be closely related to the ultimate injury. *Canton*, 489 U.S. at 91. And, as the Supreme Court emphasized "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick*,131 S. Ct. at 1359.

16

Scott Township could be liable under § 1983 if they failed to train Ferraro and that failure resulted in a violation of Ms. Knick's Fourth Amendment rights. However, because Ms. Knick has failed to plead sufficient facts that could give rise to a Fourth Amendment violation, her claim for failure to train against such alleged violative behavior must also fail. Therefore, Ms. Knick's claim against Scott Township alleging failure to train its Code Enforcement Officer will be dismissed for failure to state a claim upon which relief can be granted.

Ms. Knick seeks punitive damages against Scott Township in her requested relief under Count II. (*Am. Compl.*) Defendants argue that Ms. Knick is not entitled to punitive damages on her claims against Scott Township. (Doc. 10, ¶¶ 46-52.) The Third Circuit has stated "a municipality is immune from punitive damages under 42 U.S.C. § 1983," *Smith v. Borough of Dunmore*, 633 F.3d 176, 183 (3d Cir. 2011)(citing *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 271, 101 S.Ct. 2748, 69 L. Ed.2d 616 (1981)). Ms. Knick has failed to state a claim under Count II that would permit her to be awarded punitive damages against Scott Township.

### III.    Count III-Fourth and Fourteenth Amendment Claims Against Ferraro

Ferraro entered on to Ms. Knick's property on April 10, 2013 and did so under color of state law. (*Am. Compl.*, ¶¶ 35-36.) Ms. Knick alleges this entry on to her property was in violation of the Fourth and Fourteenth Amendments to the United States Constitution, resulting in liability under § 1983. (*Id.* at ¶ 37.) Ms. Knick further alleges that Ferraro's actions were "willful, malicious, and/or were made in reckless disregard of Plaintiff's civil rights" therefore requesting punitive damages. (*Id.* at ¶ 39.) Defendants seeks dismissal of Ms. Knick's claims against Ferraro.

Despite raising the issue for the first time in their reply brief, Defendants argue Ferraro should not be named in his official capacity because Ms. Knick's complaint already names Scott Township with regard to her Fourth Amendment claim (Count I of the Amended Complaint). (Doc. 16, 7 n. 2.) In *Kentucky v. Graham*, 473 U.S. 159, 165 66, 105 S. Ct. 3099, 3105, 87 L. Ed. 2d 114 (1985), the Supreme Court set forth the difference in personal

versus official capacity suits. When suing in an individual capacity, "[p]ersonal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law; where "[o]fficial-capacity suits, in contrast, 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Id*. at 165-66 (citing *Monell*  436 U.S. at 690, n. 55, 98 S.Ct. at 2035, n. 55.). "[A] judgment against a public servant 'in his official capacity' imposes liability on the entity that he represents provided, of course, the public entity received  notice and an opportunity to respond." *Brandon v. Holt*, 469 U.S. 464, 471-72 72, 105 S. Ct. 873, 878, 83 L. Ed. 2d 878 (1985). Therefore, Ms. Knick's claim against Ferraro in his official capacity shall be dismissed. Even if she were to state a claim upon which relief could be granted, a successful suit against Ferraro in his official capacity would impose liability on Scott Township and is therefore, redundant. The claims made in Count III against Ferraro in his official capacity shall be dismissed.

Defendants additionally argue that Ferraro is entitled to qualified immunity for claims made against him in an individual capacity. (Doc 10 at ¶ 45; Doc. 14, 10.) A defendant official may be entitled to qualified immunity or a good faith, affirmative defense. *Harlow v. Fitzgerald*, 457 U.S. 800, 815, 102 S. Ct. 2727, 2736, 73 L. Ed. 2d 396 (1982).  The defense has both an objective and a subjective aspect, with the objective aspect involving a "presumptive knowledge of and respect for 'basic, unquestioned constitutional rights.'" *Id.* at 815, 2736 (quoting *Wood v. Strickland*, 420 U.S. 308, 322, 95 S. Ct. 992, 1001, 43 L. Ed.2d 214 (1975)). "Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Taylor v. Barkes*, 135 S. Ct. 2042, 2044, 192 L. Ed. 2d 78 (2015) (quoting *Reichle v. Howards,* 132 S.Ct. 2088, 2093, 182 L.Ed.2d 985 (2012)). "In considering the applicability of qualified immunity, courts engage in a two-pronged examination[:] [f]irst, a court must decide 'whether the facts that a plaintiff has ... shown make out a violation of a constitutional right'" and "second, the court must determine 'whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct.'" *Spady v. Bethlehem Area Sch. Dist.*, 800 F.3d 633, 637 (3d Cir. 2015) (citing

*Pearson v. Callahan,* 555 U.S 233, 232, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009)). "Courts may begin their consideration with either prong." *Pearson,* 555 U.S at 236. "To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle*, 132 S. Ct. at 2093, 182 L. Ed at 985. "[E]xisting precedent must have placed the statutory or constitutional question beyond debate" for a right to be clearly established. *Id*. The Supreme Court does "not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Taylor*, 135 S. Ct. at 2044.

Ms. Knick states Ferraro conducted a search of her property on April 10, 2013. *(Am. Compl.,* ¶ 18.) Ms. Knick has not pled facts with regard to the area he searched nor that the search was in any way contrary to the rights protected under the Fourth Amendment. As discussed above, the Fourth Amendment does not protect against the entry of an official on to open fields. "An officer conducting a search is entitled to qualified immunity where clearly established law does not show that the search violated the Fourth Amendment." *Pearson*, 555 U.S. at 243-44, 129 S. Ct. at 822. The facts alleged regarding an entry onto the property of Ms. Knick do not rise to the level of a plausible Fourth Amendment violation. Additionally, Ferraro was acting pursuant to the Ordinance. The Ordinance provided for his entry onto property within Scott Township to ensure compliance with the mandates prescribed. (Doc. 14-1.)[4]  Therefore, it is reasonable for him to believe that his conduct complied with the law and thus, Ferraro should be entitled to qualified immunity.

With regard to Ms. Knick's request for punitive damages against Ferraro,   "[p]unitive damages may be awarded in a § 1983 action only where 'the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference

---

[4]

Because I may consider  "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss, the text of the Ordinance will be considered. *Pension Benefit Guar.*, 998 F.2d at 1196.

to the federally protected rights of others.'" *Smith v. Cent. Dauphin Sch. Dist.*, 419 F. Supp. 2d 639, 649 (M.D. Pa. 2005) (citing *Smith v. Wade,* 461 U.S. 30, 56, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983)). Ms. Knick has failed to plead any facts regarding evil motive or intent and rather simply states that "Defendant Ferraro's actions as complained of, were willful, malicious, and/or were made in reckless disregard of Plaintiff's civil rights." *(Am. Compl.,* ¶ 39.) As stated above, "mere conclusory statements will not do." *Fowler,* 578 F.3d at 210. Ms. Knick has not pled any factual allegations to substantiate the conclusory statement in the Amended Complaint and therefore, she has failed to state a claim upon which the requested relief can be granted. Ms. Knick's claims against Ferraro both in his official and individual capacity shall be dismissed.

## IV.    Count IV-First, Fourth, Fifth and Fourteenth Amendment Claims

Ms. Knick alleges that Scott Township enacted "special legislation" when they enacted the Ordinance,  and the enactment of the Ordinance was accomplished in retaliation for the exercise of her First Amendment Rights. (*Am. Compl.*, ¶41.) The Ordinance is also alleged to be violative of Ms. Knick's rights under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution. (*Id.*) Ms. Knick states the Ordinance is "illegal, unconstitutional and without force of law." (*Id.*) Count IV of the Amended Complaint provides several overlapping alleged violations of her constitutional rights. Defendants have moved to dismiss all of Count IV, arguing Ms. Knick has failed to plead sufficient facts to withstand their 12(b)(6) challenge. The claims are addressed below in the order raised, however, I agree with Defendants that Count IV of the Amended Complaint fails to state a claim upon which relief can be granted, and therefore, shall be dismissed.

### a.    Ordinance Vague

Ms. Knick first alleges that the Ordinance's provisions are vague. (*Am. Compl.*, ¶ 41(b)). In support of her allegation, Ms. Knick, states that the Ordinance contains "no objective criteria to define the existence of a cemetery or burial ground." (Doc. 15 at 12.) A

void-for-vagueness challenge requires a court to ensure fairness in a statute or standard so as not to be so vague that a "party would not know the conduct is prohibited." *Borden v. Sch. Dist. of Twp. of E. Brunswick*, 523 F.3d 153, 166 (3d Cir. 2008); *See also San Filippo v. Bongiovanni,* 961 F.2d 1125, 1136 (3d Cir.1992). Thus, a statute is unconstitutionally vague when "men of common intelligence must necessarily guess at its meaning." *Borden*, 523 F.3d at 166-67 (citing *Broadrick v. Oklahoma,* 413 U.S. 601, 607, 93 S.Ct. 2908 (1973)) (citations omitted). The statute or standard is reviewed on a case-by-case basis, and "the party opposing the statute or standard must show that it is vague as applied to him." *Borden*, 523 F.3d at 167; *San Filippo,* 961 F.2d at 1136. Additionally, "in the civil context, statutes need not be as precise as in the criminal context and are, therefore, less likely to be invalidated under a void-for-vagueness challenge." *Borden*, 523 F.3d at 167; *San Filippo,* 961 F.2d at 1135. In *Town of McCandless v. Bellisario*, 709 A. 2d 379, 381, 551 Pa. 83,87 (Pa. 1997), the Pennsylvania Supreme Court set forth that municipal ordinances that do "not provide for imprisonment upon conviction or failure to pay a fine or penalty . . . are not Penal laws." The language of the Ordinance relating to penalties for non-compliance provides:

> 7.) **Violations/Penalties/Enforcement** - Any person or owner who violates or permits a violation of the Ordinance, upon being found liable therefore in a civil enforcement proceeding before a District Justice or Magisterial District Justice, shall pay a fine and/or penalty of not less than Three Hundred ($ 300.00) Dollars nor more than Six Hundred ($ 600.00) Dollars per violation, plus all court costs, including reasonable attorney's fees incurred by the Township in the enforcement of this Ordinance. Each day that the violation exists shall constitute a separate offense. In any case where penalty for the violation has not been timely paid, and the person against whom the penalty is imposed is found to have been liable therefore in civil proceedings, the violator shall be liable for the penalty imposed including additional reasonable attorney's fees incurred by the Township in any enforcement proceedings. If the violator neither pays nor timely appeals the judgment, once final, the Township may enforce the judgment pursuant to the applicable rules of civil procedure.
>
> Nothing contained herein shall preclude the Township and/or Code Enforcement Officer from instituting any other appropriate civil or equitable proceedings to restrain, correct or abate a violation of this Ordinance as may be allowed for under any and all appropriate laws, statutes, Ordinances and/or regulations.

(Doc. 14-1 at 2.) The Ordinance does not provide for the possibility of imprisonment for failure to pay or for noncompliance and is strictly limited to civil and equitable remedies.

Ms. Knick argues that the "lack of specific objective criteria in the Scott Township 'Cemetery Ordinance' creates a law so indefinite as to allow arbitrary and discriminatory enforcement and the Ordinance fails Constitutional compliance." (Doc. 15 at 12.) Ms. Knick relies on *Giaccio v. Pennsylvania,* 382 U.S. 399, 86 S. Ct. 518, 15 L. Ed.2d 447 (1966), for the principles of constitutional compliance of a statute or standard. (Doc. 15 , 12.) However, Ms. Knick fails to address how these principles should be applied in the current case, despite asserting that the Ordinance fails to comport. (*Id.)* In *Giaccio,* the Supreme Court invalidated a Pennsylvania statute allowing a jury to assess whether a defendant who is acquitted on the underlying offense, should be liable for costs; and permitted incarceration of the defendant until costs are paid. *Id.* at 401. Because there were no guidelines for how a jury was to make the determination of whether an acquitted Defendant was assessed costs and subject to possible incarceration, the Court deemed the statute too vague to be enforced stating:

> Certainly one of the basic purposes of the Due Process Clause has always been to protect a person against having the Government impose burdens upon him except in accordance with the valid laws of the land. Implicit in this constitutional safeguard is the premise that the law must be one that carries an understandable meaning with legal standards that courts must enforce.

*Id.* at 403.[5] The Ordinance in the current case does not suffer from the same infirmities. Ms.

---

[5]

Ms. Knick additionally cites to *City of Chicago v. Morales*, 527 U.S. 41, 52, 119 S. Ct. 1859, 144 L.Ed.2d 67 (1999) (holding that a statute criminalizing the failure to disperse after being warned by a police officer that the individual was impermissibly loitering with a gang member, without further defining loitering or prohibited conduct, was void for vagueness) and *Tucson Woman's Clinic v. Eden*, 379 F. 3d 531, 554 (9th Cir. 2004) (invalidating a provision of an abortion clinic regulation that required providers to "ensure that a patient is afforded the following rights, and is informed of these rights: [ ] To be treated with consideration, respect, and full recognition of the patient's dignity and individuality" as unconstitutionally vague and "too subjective for providers to know how they should behave in order to comply,

Knick argues that the Ordinance "essentially allows the officials of Scott Township to point to any parcel of land, claim it as a cemetery and then endeavor to enforce the provisions of Ordinance." (Doc. 15 , 12.) Despite this allegation, the Ordinance contains a definition section that provides the definitions for a Burial Place as "A portion of ground either occupied by a tomb or grave or set apart for a tomb or grave for burial of the dead." (Doc. 14-1, 1.) Additionally, a Cemetery is defined by the Ordinance as " A place or area of ground, whether contained on private or public property, which has been set apart for or otherwise utilized as a burial place for deceased human beings." (*Id.*) Ms. Knick argues that because the Ordinance does not require "a reservation in the chain of title, registration with agencies of the Commonwealth of Pennsylvania, physical indicia of the existence of a cemetery in the form of tombstones and the conducting or record of conducting internments of deceased humans," the Ordinance is unconstitutionally vague.  (Doc. 15, 12.) I find the Ordinance sufficiently provides for the definition of such areas of land and therefore, the Ordinance is not void-for-vagueness. The parameters of the regulated area are sufficiently defined. Ms. Knick has failed to allege any facts to demonstrating how the Ordinance is vague as applied to her property and to make her claim that the Ordinance is too vague plausible.

### b.      Penal Regulation-Ex Post Facto

Ms. Knick contends that the Ordinance "creates a retroactive penal regulation regarding private property in violation of the prohibition against ex post facto laws." (*Am. Compl.*, ¶ 41(b).) Neither party has expanded on this alleged deprivation in their briefing. *See* LR 7.6 of the Local Rules for the Middle District of Pennsylvania. However, as I set forth above, the Pennsylvania Supreme Court has held that a municipal ordinance that does "not provide for imprisonment upon conviction or failure to pay a fine or penalty . . . [is] not [a] Penal law." *Town of McCandless,* 709 A. 2d at 381, 551 Pa. at 87. Therefore,  Ms. Knick has

---

as well as too vague to limit arbitrary enforcement.") (Doc. 15, 12.) The Ordinance does not suffer from the same lack of defining language and therefore the provisions at issue are distinguishable.

failed to alleged sufficient facts to state a claim that the Ordinance is a penal ordinance that provides for retroactive penal regulation. The conclusory statement does not provide any basis for relief.

### c.    Fourteenth Amendment Challenge

Ms. Knick's initial claims or bases  alleged unconstitutionality in Count IV will be considered a facial challenge to the Ordinance. When asserting a facial challenge, a party "seeks to vindicate not only his own rights, but those of others who may also be adversely impacted by the statute in question." *CMR D.N. Corp. v. City of Philadelphia,* 703 F.3d 612, 623 (3d Cir. 2013) (quoting *City of Chi. v. Morales,* 527 U.S. 41, 55 n. 22, 119 S.Ct. 1849, 144 L.Ed.2d 67 (1999)). "In a facial challenge, the plaintiff does not seek to establish that the law cannot be applied to him; rather, he or she must show that 'no set of circumstances exists under which the [challenged] Act would be valid.'" *CMR D.N. Corp.,* 703 F. 3d at 623 (quoting *United States v. Mitchell,* 652 F.3d 387, 405 (3d Cir.2011)) (citations omitted).

Ms. Knick alleges that the provisions of the Ordinance are "unreasonable and have no rationale [sic] relation to the promotion of the public health and safety and exist as an improper exercise of the Township Police power." (*Am. Compl.*, ¶ 41(c).) Such a statement concedes that the Ordinance should be subject to rational basis review, however,  Ms. Knick has failed to expand on her claim that the enactment of the Ordinance bears no rational relationship to the public health and safety of Scott Township residents in her  brief in opposition. Therefore, the Ordinance will be considered under rational basis review. "Under rational basis review, "a statute withstands a substantive due process challenge if the state identifies a legitimate state interest that the legislature could rationally conclude was served by the statute."*Alexander v. Whitman*, 114 F.3d 1392, 1403 (3d Cir. 1997)(quoting *Sammon v. New Jersey Bd. Of Medical Examiners*, 66 F. 3d 639, 646 (3d Cir. 1995)). The Third Circuit has cautioned that "a court engaging in rational basis review is not entitled to second guess the legislature on the factual assumptions or policy considerations underlying the statute . . . The sole permitted inquiry is whether the legislature rationally might have believed the predicted reaction would occur or that the desired end would be served." *Sammon*, 66 F.3d

at 645.

The Ordinance on its face states that Scott Township, through the Second Class Township Code, grants the Supervisors the ability "to adopt Ordinances in which general or specific powers of the Township may be exercised in order to promote the health, safety and welfare of its residents." (Doc. 14-1, 1.) The Ordinance further states "the Board of Supervisors of Scott Township believes that regulating cemeteries within the Township serves in the best interest of the Township." (*Id.*) The Supervisors stated their belief in the text of the Ordinance that the enactment of the Ordinance was in furtherance of the health, safety and welfare of the residents of Scott Township. Because resident health, safety and welfare are legitimate state interests, it is rational to believe that regulating places of burial would serve that need, and therefore, the Ordinance survives rational basis review.

Ms. Knick raises various other challenges to the Ordinance as unconstitutional as-applied to her and, as warranted, those claims are addressed below.

### d.    Public Taking

Ms. Knick sets forth a claim that the provision of the Ordinance that states that "all cemeteries within the Township shall be kept open and accessible to the general public during day light hours" amounts to a "public taking without just compensation." (*Am. Compl.,* ¶ 41(d).) This challenge is a facial attack to the Ordinance.

The Takings Clause of the Fifth Amendment prohibits the federal government from taking private property for public use without providing just compensation, *see* U.S. Const. amend. V, and the Takings Clause applies to state action through the Fourteenth Amendment. *See Am. Express Travel Related Servs., Inc. v. Sidamon-Eristoff*, 669 F.3d 359, 370 (3d Cir. 2012).   Takings claims generally fall into two categories: physical and regulatory. *See Yee v. City of Escondito*, 503 U.S. 519, 522-23, 112 S. Ct. 1522, 118 L. Ed. 2d 153 (1982).   A physical taking occurs when there is either a condemnation or a physical appropriation of property. *See Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 322, 122 S. Ct. 1465, 152 L. Ed. 2d 517 (2002).   By contrast, a regulatory taking occurs when "government regulation of private property [is] . . . so onerous

that its effect is tantamount to a direct appropriation or ouster." *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 537, 125 S. Ct. 2074, 161 L. Ed. 2d 876 (2005) (quoting *Pa. Coal Co. v. Mahon*, 260 U.S. 393, 415, 43 S. Ct. 158, 67 L. Ed. 322 (1922)). A regulation violates the Takings Clause "where government requires an owner to suffer a permanent physical invasion of her property," or where the owner is completely deprived of "all economically beneficial use" of the property. *Id*. at 538. (internal citations omitted).

The type of takings inquiry depends on the type of attack leveled against the government action. **"**The Supreme Court has held that an as-applied Fifth Amendment Just Compensation Takings claim against a municipality's enforcement of a zoning ordinance is not ripe until (1) 'the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue' (the 'finality rule'), and (2) the plaintiff has unsuccessfully exhausted the state's procedures for seeking 'just compensation,' so long as the procedures provided by the state were adequate." *Cnty. Concrete Corp. v. Town of Roxbury*, 442 F.3d 159, 164 (3d Cir. 2006)(citing *Williamson County Regional Planning Com. v. Hamilton Bank,* 473 U.S. 172, 186, 194–95, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985)). However, when a facial attack is made to an ordinance, *i.e.*, "a claim that the mere enactment of a regulation either constitutes a taking without just compensation, or a substantive violation of due process or equal protection", a "final decision" is not necessary." *Cnty Concrete Corp.*, 442 F. 3d at 164. This is because "when a landowner makes a facial challenge, he or she argues that any application of the regulation is unconstitutional; for an as-applied challenge, the landowner is only attacking the decision that applied the regulation to his or her property, not the regulation in general.'" *Id.* (quoting *Eide v. Sarasota County,* 908 F.2d 716, 724 n. 14 (11th Cir.1990)).

Ms. Knick alleges that the Ordinance is a taking as enacted. However, she fails to plead any facts that would make her claim plausible that the enactment of the Ordinance amounts to a taking. The broad statement that the Ordinance "exists as an effort at public taking without compensation" and the reiteration of the Ordinance's language does not suffice to state a claim. (*Am. Compl.,* ¶ 41(d).)

Other than to state that the "application of the Ordinance to Plaintiff's private property actually creates a nuisance by mandating public access to and across Plaintiff's private property which is otherwise not open to the public," the Amended Complaint contains no allegation regarding an as-applied taking. (*Am. Compl.,* ¶ 41(e).) Therefore, Ms. Knick fails to plead facts that state she has suffered a taking through application of the Ordinance to her property.[6]

### e.    Nuisance

As addressed above, Ms. Knick appears to conflate a nuisance with an as-applied taking, however, she fails to put forth how the value of her property is regulated or diminished  by the application of the Ordinance. Therefore, construing the nuisance language to allege an as-applied Taking, Ms. Knick has failed to plead facts to support her allegation that the "application of the Ordinance to Plaintiff's private property actually creates a nuisance by mandating public access to and across Plaintiff's private property which is otherwise not open to the public." (*Am. Compl.,* ¶ 41(e).)

### f.    Due Process and Retaliation

The Amended Complaint alleges that Defendant's enactment of the Ordinance and their attempt at enforcement "bear no relationship to the promotion of public health and safety, and both the enactment and enforcement were designed to harass Plaintiff and to otherwise discourage her from further exercise of her First Amendment Rights of Free

---

[6]

Even if Ms. Knick were to plead sufficient facts to demonstrate an as-applied taking, her claim would likely fail due to the ripeness doctrine which "serves to determine whether a party has brought an action prematurely and counsels abstention until such time as a dispute is sufficiently concrete to satisfy the constitutional and prudential requirements of the doctrine." *Cnty Concrete Corp.*, 442 F. 3d at 164 (citing *Khodara Envtl., Inc. v. Blakey*, 376 F. 3d. 187, 196 (3d Cir. 2004))(citations omitted). Ms. Knick has pled no facts about the finality of a determination regarding application of the Ordinance to her property and notably stated in her brief in opposition that "any effort by Scott Township to enforce the provisions of the "Cemetery Ordinance" against Knick property is unlikely." (Doc. 15, 11.)

Speech and Expression." (*Am. Compl.*, ¶ 41(f).) Ms. Knick alleges violations of her Fourteenth Amendment rights to Due Process, and that the action by Defendants was in retaliation for the exercise of her First Amendment Rights.

### 1.    Due Process

Ms. Knick alleges a Fourteenth Amendment claim in Count IV. The Fourteenth Amendment to the United States Constitution provides, in pertinent part, that a state shall not "deprive any person of life, liberty, or property, without due process of law; . . ." U.S. Const. amend. XIV, § 1.   Due process under the Fourteenth Amendment has both "substantive and procedural components." *Evans v. Sec'y Pa. Dep't of Corr.*, 645 F.3d 650, 658 (3d Cir. 2011).

### A.    Substantive Due Process

In Count IV, Ms. Knick alleges a violation of her substantive due process rights with regard to her real property. "The substantive component of the Due Process Clause limits what government may do regardless of the fairness of procedures that it employs." *Evans,* 645 F.3d at 659  (citing *Boyanowski v. Capital Area Intermediate Unit,* 215 F.3d 396, 399 (3d Cir.2000)).   According to the Third Circuit, "the fabric of substantive due process . . . encompasses at least two very different threads." *Nicholas v. Pa. State Univ.*, 227 F.3d 133, 139 (3d Cir. 2000).   The first of these threads applies when a "plaintiff challenges a legislative act." *Id*.   The second thread "protects against certain types of non-legislative action," where "deprivation of a property interest is 'arbitrary, irrational, or tainted by improper motive'" *Id*. (quoting *Woodwind Estates, Ltd. v. Gretkowski*, 205 F. 3d 118 , 123 (3d Cir. 2000)).

First, Ms. Knick has challenged the enactment of the Ordinance and therefore, challenges a legislative act. "[A] legislative act will withstand substantive due process challenge if the government "identifies a legitimate state interest that the legislature could rationally conclude was served by the statute," although legislative acts that burden certain 'fundamental' rights may be subject to stricter scrutiny." *Nicholas,* 227 F.3d at 139; *Alexander v. Whitman,* 114 F.3d 1392, 1403 (3d Cir.1997)(quoting *Sammon,* 66 F.3d at 645). As stated

above, the Ordinance survives rational basis review in that it was purportedly enacted to further the health, safety and welfare of the citizens of Scott Township, and therefore, Ms. Knick's claim for a substantive due process violation must fail.

As to challenges that fall under the second thread, non-legislative acts, a plaintiff must prove that the interest at issue is "protected by the substantive due process clause and the government's deprivation of that protected interest shocks the conscience." *Chainey v. Street*, 523 F.3d 200, 219 (3d Cir. 2008). The plaintiff must establish "as a threshold matter that he has a protected property interest to which the Fourteenth Amendment due process protection applies." *Nicholas*, 227 F. 3d at 139-40 (quoting *Woodwind Estates,* 205 F. 3d at 118. The Third Circuit has stated that a plaintiff alleges a property interest worthy of substantive due process protection "in situations where the governmental decision in question impinges upon a landowner's use and enjoyment of property." *DeBlasio v. Zoning Bd. of Adjustment*, 53 F.3d 592, 600-01 (3d Cir.1995), *abrogated on other grounds by United Artists Theatre Cir., Inc. v. Twp. of Warrington*, 316 F.3d 392, 400 (3d Cir. 2003). Ms. Knick has a protected interest in her property. However, that does not end the inquiry. Ms. Knick has failed to plead any facts regarding actions on behalf of Defendants that "shock the conscience." In order to be a violation of substantive due process, a plaintiff must allege how the government action shocks the conscience. Such has not been stated in Ms Knick's Amended Complaint. There have additionally been no facts pled regarding an arbitrary application of the Ordinance to Ms. Knick. The Ordinance was applied as written when the notice of violation was sent and there is nothing contained in the Amended Complaint to substantiate that the Ordinance was applied arbitrarily to Ms. Knick or that it was not applied to any other citizen of Scott Township. Therefore, Ms. Knick's substantive due process claims shall be dismissed.

### B.     Procedural Due Process

Ms. Knick alleges broadly that the application of the Ordinance to her property is unconstitutional and because she alleges Fourteenth Amendment violations, a procedural due process claim will be considered. Ms. Knick fails to expand upon her allegation of a

violation of procedural due process.

"To state a claim under § 1983 for deprivation of procedural due process rights, a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" *Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006) (citing *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000)).  For purposes of procedural due process, courts look to state law to determine whether a property interest exists. *Dee v. Borough of Dunmore*, 549 F.3d 225, 229 (3d Cir. 2008) (citing *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972) ("Property interests are not created by the Constitution.  Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.")). "A procedural due process claim requires . . . consider[ation of] three factors: (1) the private interest affected by the official action; (2) the risk that the plaintiff will suffer an erroneous deprivation through the procedure used and the probable value if any of additional procedural safeguards; and (3) the government's interest." *Reichley v. Pennsylvania Dep't of Agric.*, 427 F.3d 236, 246 (3d Cir. 2005)(citing *Mathews v. Eldridge,* 424 U.S. 319, 334-35, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)).

Notwithstanding Ms. Knick's failure to plead sufficient facts for a procedural due process claim, any allegation, even if a cursory statement, of such a deprivation is without merit. Despite Ms. Knick's clear interest in the use and enjoyment of her property, she has pled nothing more than conclusory statements regarding the fact that her property will be adversely affected by the Ordinance.[7] The risk of erroneous deprivation through the

---

[7]

Ms. Knick has additionally failed to allege facts that there has been a finality of decision with regard to the application of the Ordinance to her property.

30

procedure, *i.e.,* the issuance of an notice of violation and possible civil enforcement proceedings, used is minimal. The Ordinance specifically lays out that, upon the exercise of enforcement proceedings by Scott Township, she must be found liable for violation of the Ordinance. (Doc. 14-1,  2.)  There is an important government interest involved. The Ordinance provides that the adoption of the Ordinance is "in order to promote the health, safety and welfare of its residents." (Doc. 14-1,  1.) The weighing of the factors does not lead to a determination in Ms. Knick's favor.  The procedural due process claim shall be dismissed.

### 2.    Retaliation

Ms. Knick alleges that the Ordinance was enacted in retaliation for the exercise of her First Amendment rights. (*Am. Compl.,* ¶¶ 41(f), 47(f).)  A First Amendment retaliation claim requires "(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir. 2006) (citing *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003)). Ms. Knick has attended meetings of the Scott Township Supervisors regularly and has confronted the "Supervisors and Administrative Officials with respect to the expenditure of funds, tax revenue issues and various Municipal decisions." (*Am. Compl,.* ¶ 15.) The Supervisors and Officials, including Ferraro, have "expressed their annoyance, aggravation and displeasure, both publicly and privately, regarding Plantiff['s] . . .exercise of her First Amendment Rights." (*Am. Compl.,* ¶ 16.) Ms. Knick alleges that the enactment of the Ordinance and subsequent attempts at enforcement were retaliatory actions in response to her exercise of her First Amendment Rights. (*Id.* at ¶ 41(f).)

The Third Circuit has reiterated that the First Amendment forbids retaliation for speech even about private matters. *Eichenlaub v. Twp. of Indiana,* 385 F.3d 274, 284 (3d Cir. 2004)(deeming speech addressing private grievances at supervisors' meetings was entitled to First Amendment Protection). *Eichenlaub* further stated that "private speech (unless obscene or fighting words or the like) is still protected on the First Amendment

ladder." *Id*. Ms. Knick's statements at Supervisors' meetings would similarly be entitled to First Amendment protection. The first prong of the standard for retaliatory actions has been met.

However, Ms. Knick has failed to plead facts sufficient to state a claim for retaliation against her by Defendants. Ms. Knick simply makes a conclusory statement that "Scott Township enacted "Special Legislation" designed to harass her and to chill her in the exercise of her First Amendment Rights." (Doc. 15, 10.) The Amended Complaint fails to set forth facts how the enactment of the Ordinance was in fact connected to her statements at meetings, nor how the enactment of such would deter a person of reasonable firmness from exercising their rights. Therefore, her claim for First Amendment retaliation shall be dismissed. However, as stated below, Ms. Knick shall be given an opportunity to amend her complaint in order to state a claim for First Amendment Retaliation.

### g.    Fourth Amendment

Ms. Knick cites her allegation that the Ordinance attempts to "grant to the Township rights to access private property which are violative of the Fourth Amendment of the United States Constitution." (*Am. Compl.*, ¶ 41(g).) This allegation is construed to be a facial challenge to Ordinance with regard to the Fourth Amendment. The Fourth Amendment, applicable to the states through the Fourteenth Amendment, states that "[t]he right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause...."  U.S. Const. amend. IV.   The controlling question that must be answered is whether there is a "constitutionally protected reasonable expectation of privacy." *Ciraolo*, 476 U.S. at 211, 106 S. Ct. at 1811. As discussed at length above, there is not a constitutionally protected objective reasonable expectation of privacy in open fields. There is no Fourth Amendment violation as the Ordinance applies to Ms. Knick and to speculate that a situation will arise in Scott Township where a cemetery or burial ground will be alleged to be contained in a residence, the curtilage surrounding a residence or commercial structure, would be inappropriate.

## V.        COUNT V

### 1. Declaratory Judgment

As discussed above at length, I have discretion with regard to the exercise of jurisdiction over a request for declaratory judgment. Ms. Knick requests that I issue a Declaratory Judgment deeming the Ordinance unconstitutional. (*Am. Compl.*, ¶ 52(a).) In support of her contention that the Ordinance is unconstitutional, Ms. Knick reiterates the allegations of Count IV.

In determining whether to exercise jurisdiction a court is to consider if a declarative judgment would serve any purpose beyond the underlying claim. *Westfall T.p. v. Darwin Nat. Assur. Co.*, No. 14 CV 1654, 2015 WL 106578, at *7 (M.D. Pa. Jan. 7, 2015). I have stated:

> the question is whether, taking all facts in a light most favorable to the plaintiff, Plaintiff has stated a declaratory relief claim that will serve a useful purpose in clarifying and settling the legal relations in issue, and will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.

and that "[w]hile a party may plead alternative statements of a claim, a district judge may dismiss a claim for declaratory relief if it is duplicative of a contract or other claim." *Id.* Because a declaratory judgment in this case is duplicative of the coercive claims in Ms. Knick's Amended Complaint, I will exercise my discretion to decline to issue a declaratory judgement. Because Ms. Knick has failed to state claims for constitutional violations, I will not issue a further declaratory judgment with regard to the constitutionality of the Ordinance. I will dismiss Count V without prejudice.

Ms. Knick additionally requests a Declaration of Rights, without which she alleges she "will be uncertain of her rights and responsibilities under the law." (*Am. Compl.*, ¶ 46.) As addressed at length above, Ms. Knick has failed to state a claim for constitutional violations, therefore, no further declaration of rights and responsibilities will be issued. Scott Township has yet to institute civil enforcement proceedings against Ms. Knick. Therefore, it would be inappropriate to address rights and responsibilities at this time.

33

### 2.    Temporary Restraining Order/Preliminary Injunctive Relief

Ms. Knick has additionally requested that a temporary restraining order and preliminary injunctive relief be issued.  (*Am. Compl.*, Count V.)  The following four factors are to be considered by a court ruling on a motion for a preliminary injunction:

> (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief; (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest.

*Gerardi v. Pelullo*, 16 F.3d 1363, 1373 (3d Cir. 1994). These same factors are used to determine a motion for a temporary restraining order. *Lozano v. City of Hazleton*, 459. F. Supp. 332, 335 (M.D. Pa. 2006).

Ms. Knick alleges in the Amended Complaint that she is "entitled to a Temporary Restraining Order, as well as a Preliminary and Permanent Injunction." (*Am.  Compl.* at ¶ 45.) According to Ms. Knick, she "will suffer irreparable injury and will continue to suffer real and immediate threat of irreparable injury as the result of the existence, operation, enforcement and threat of enforcement of the challenged Ordinance" and she has "no adequate or speedy remedy at law." (*Id.* at ¶ 44.) Ms. Knick alleges the harm to her "as a result of Defendants' attempts to enforce an unconstitutional and void Ordinance is substantial" (*Id.* at ¶ 48.); that unless Defendants are enjoined, she will be deprived of her constitutionally protected rights (*Id.* at ¶ 49.); that "no harm or prejudice will result to Defendants if relief is granted" (*Id.* at ¶ 50.); she has no adequate remedy at law (*Id.* at ¶ 51.); and her "right to relief is clear." (*Id.* at ¶ 52.) Ms. Knick has failed to allege facts that demonstrate her entitlement to the relief requested. She has offered nothing more than mere conclusory legal statements. Therefore, I will not grant her request for a Temporary Restraining Order, nor preliminary injunctive relief.

### 3.    Permanent Injunctive relief

Because Ms. Knick's Amended Complaint will be dismissed in its entirety, permanent injunctive relief is not appropriate.

**VI. Conclusion**

For the above stated reasons, Defendants' motion to dismiss will be granted. However, the Third Circuit has instructed that a district court must permit a curative amendment if a claim is vulnerable to a 12(b)(6) dismissal, unless amendment would be inequitable or futile. *See Phillips v. Cnty. of Allegheny,* 515 F.3d 224, 236 (3d Cir. 2008). Because it is not certain that amendment of Count IV would be futile, Ms. Knick will be permitted one opportunity to amend her pleading to state a claim consistent with this Memorandum.  I believe it would be futile to permit amendment of Counts I through III based on the determination that no relief can be granted for the claimed violation of Ms. Knicks's Fourth Amendment rights.

An appropriate order follows.


October 28, 2015                                        /s/ A. Richard Caputo
Date                                                         A. Richard Caputo
                                                              United States District Judge