**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

ROSE MARY KNICK,

    Plaintiff,

    v.

SCOTT TOWNSHIP,

    Defendant.

CIVIL ACTION NO. 3:14-CV-02223

(JUDGE CAPUTO)

## **MEMORANDUM**

Presently before the Court is a Motion to Dismiss Plaintiff Rose Mary Knick's Second Amended Complaint ("SAC," Doc. 21) filed by Defendant Scott Township. Plaintiff's SAC asserts claims for damages under 42 U.S.C. § 1983 for an unlawful search and seizure of her property in violation of the Fourth Amendment, and an unlawful physical taking of her property without just compensation in violation of the Fifth and Fourteenth Amendments. Additionally, Plaintiff seeks a declaratory judgment declaring the Scott Township Ordinance No. 12-12-20-001 unconstitutional, and a temporary restraining order as well as preliminary and permanent injunctive relief against Scott Township's enforcement of said Ordinance. Because this Court previously dismissed Plaintiff's Fourth Amendment claims, Defendant's Motion to Dismiss Plaintiff's Fourth Amendment claims will be GRANTED. Because Plaintiff's takings claims are not ripe for review in federal court, Defendant's Motion to Dismiss Plaintiff's Fifth and Fourteenth Amendment claims will be GRANTED. Accordingly, because Plaintiff's takings claims are not ripe for review, Defendant's Motion to Dismiss Plaintiff's claims for declaratory, injunctive, and other additional relief will be GRANTED.

### **I. Background**

The facts as set forth in Plaintiff's Complaint are as follows:

Plaintiff, Rose Mary Knick, is a resident of Scott Township, Pennsylvania. (SAC ¶ 5, Doc. 21.) Scott Township, the only defendant named in Plaintiff's SAC, is a political

subdivision of the Commonwealth of Pennsylvania, organized and designated as a Township of the Second Class. (SAC ¶ 6.) Ms. Knick owns approximately 90 acres of real estate, comprised of two parcels, located at 49 Country Club Road, in Scott Township, Pennsylvania. (*Id.* ¶¶ 5, 7.) The property has been continuously owned and occupied by Ms. Knick and her family members since 1970. (*Id.* ¶ 7) The property has been used as a primary residence, as well as farmland and grazing areas for horses, cattle and other farm animals. (*Id.*) There are "No Trespassing" signs placed at regular intervals and the property is bounded by stonewalls, fences and other boundary markers. (*Id.* ¶ 8.)

Ms. Knick frequently attends meetings of the Scott Township Board of Supervisors ("Supervisors") and regularly confronts the Supervisors and administrative officials with respect to the expenditure of funds, tax revenue issues, and municipal decisions. (*Id.* ¶ 9.)

In September 2008, at several public meetings and in response to a citizen inquiry, the Supervisors and the Township Solicitor discussed the alleged existence of an ancient burial ground on Ms. Knick's property. (*Id.* ¶ 10.) In 2008 and early 2009, Ms. Knick, as well as her counsel at the time, made a Right-to-Know request of the Supervisors. (*Id.* ¶ 11.) The request sought particulars regarding the suggestion that an ancient burial ground was on her property. (*Id.*) Ms. Knick and her counsel also advised the Supervisors that there was no designation in the chain of title to her property regarding a burial ground or cemetery and also that there was no physical evidence of the existence of a burial ground or cemetery. (*Id.*) Ms. Knick's attorney provided Scott Township, through their solicitor, a correspondence dated October 23, 2008, reiterating that there was no designation of a burial ground or cemetery in the chain of title nor any evidence of such on Ms. Knick's property. (*Id.* ¶ 13.)

In December 2012, the Supervisors enacted Ordinance No. 12-12-20-001 ("Cemetery Ordinance" or "Ordinance"). (SAC ¶ 14.) The Ordinance addresses the

operation and maintenance of cemeteries and burial grounds within Scott Township. (*Id.*) The Supervisors determined that the Ordinance would be applied to Ms. Knick and her property. (*Id.* ¶ 19.)

On April 10, 2013, after a collective determination by the Supervisors, a Scott Township Code Enforcement Agent entered Ms. Knick's property without permission and without an administrative warrant. (*Id.* ¶ 20.) On April 11, 2013, Scott Township issued a Notice of Violation alleging that Ms. Knick's property was in violation of the Ordinance. (*Id.* ¶ 21.)

On or about May 7, 2013, Ms. Knick filed a complaint in the Lackawanna County Court of Common Pleas seeking declaratory and injunctive relief requesting the court: (1) declare the Ordinance unconstitutional; (2) prohibit Defendant from enforcing the Ordinance; (3) grant Ms. Knick preliminary and permanent injunctive relief; and (4) grant other appropriate relief, including attorneys' fees (*Id.* ¶ 23.) Ms. Knick, through counsel, provided Scott Township with notice regarding the presentation of an Emergency Motion for Injunctive Relief on or about May 7, 2013. (*Id.* ¶ 24.)  In response, the parties agreed and stipulated to an order that stayed enforcement proceedings against Plaintiff. (*Id.*) A hearing was subsequently held on October 8, 2014 in the Lackawanna County Court. (*Id.* ¶ 25.) Following the hearing, Judge John Braxton issued an Order concluding that the court was an improper venue because the case was "not in the proper posture for a decision to be rendered on the Plaintiff's requested forms of relief." (*Id.*) On October 31, 2014, the Supervisors issued another Notice of Violation alleging Ms. Knick's noncompliance with the Ordinance. (*Id.* ¶ 26.) Ms. Knick filed a Petition for Contempt of Court in the Lackawanna County Court of Common Pleas. (*Id.* ¶ 28.) After a hearing, Judge Terrance Nealon denied the Petition for Contempt and entered a Memorandum and Order, which effectively lifted

3

the stay that had previously been entered. (*Id.*) The Lackawanna County Court of Common Pleas has not yet addressed Ms. Knick's request for Declaratory Relief. (*Id.*)

Ms. Knick subsequently initiated her federal action in this Court on November 20, 2014. (Pl.'s Original Compl., Doc. 1.) Ms. Knick's First Amended Complaint sought damages under 42. U.S.C. § 1983 against Scott Township for violations of her Fourth Amendment rights, alleging the Township maintained a policy, practice, custom or procedure permitting illegal searches of private property. (Pl.'s First Am. Compl. ¶ 26, Count I, Doc. 9.) Additionally, Ms. Knick alleged that the Township failed to adequately train the Code Enforcement Official, (*id.* ¶¶ 30-33, Count II), and sought relief from the Code Enforcement Official in his official and individual capacity under § 1983, (*id.* ¶¶ 35-39, Count III.) On March 2, 2015, Defendant filed a motion to dismiss Plaintiff's First Amended Complaint. (Def.'s First Mot. to Dismiss, Doc. 10.) After considering Defendant's motion, this Court granted Defendant's motion and dismissed Counts One, Two, and Three of Plaintiff's First Amended Complaint with prejudice. (Order Granting Def.'s Mot. to Dismiss, Doc. 20.)

Ms. Knick's First Amended Complaint also claimed violations of her First, Fourth, Fifth, and Fourteenth Amendment rights under 42 U.S.C. § 1983 stemming from Scott Township's enactment of the Cemetery Ordinance (Pl.'s First Am. Compl. ¶ 41, Count IV.) Ms. Knick additionally requested a declaratory judgment declaring the Ordinance unconstitutional as well as a temporary restraining order and preliminary and permanent injunctive relief. (*Id.* ¶¶ 44-47, Count V.)  After considering the parties' briefs, this Court granted Defendant's motion to dismiss Count Four without prejudice, and provided Plaintiff a twenty-one (21) day window to file an amended pleading. This Court also granted Defendant's motion to dismiss Count Five without prejudice.

Plaintiff subsequently filed a Second Amended Complaint ("SAC") within the prescribed time frame. (SAC, Doc. 21.) Defendant responded to Plaintiff's SAC by filing the pending Motion to Dismiss for failure to state a claim. (Def.'s Second Mot. to Dismiss, Doc. 22.) Plaintiff filed a Brief in Opposition to Defendant's Motion to Dismiss, (Pl.'s Br. in Opp'n, Doc. 26), and Defendant filed a Reply Brief in support of the pending Motion, (Def.'s Reply, Doc. 27.)

Plaintiff's SAC alleges Fourth, Fifth, and Fourteenth Amendment violations. (*See* SAC, Doc. 21.) However, because this Court already dismissed Plaintiff's Fourth Amendment claims with prejudice, the only live constitutional claims before the Court are Plaintiff's facial and as-applied takings claims under the Fifth and Fourteenth Amendments.[1]

## II. Discussion

### A. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion, the Court's role is limited to determining if a plaintiff is entitled to offer evidence in support of her claims. *See Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir. 2000). The Court does not consider whether a plaintiff will ultimately prevail. *Id.* A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *See Gould Elecs. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

---

[1] In their briefs, the parties agreed that the only claims in issue in Plaintiff's SAC are the Takings Clause claims. (*See* Pl.'s Br. in Opp'n 1; Def.'s Reply 2.)

A pleading that states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The statement required by Rule 8(a)(2) must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Detailed factual allegations are not required. *Twombly*, 550 U.S. at 555. However, mere conclusory statements will not do; "a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Instead, a complaint must "show" this entitlement by alleging sufficient facts. *Id*. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). As such, "[t]he touchstone of the pleading standard is plausability." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

The inquiry at the motion to dismiss stage is "normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

"When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

In deciding a motion to dismiss, the Court should consider the complaint, exhibits attached to the complaint, and matters of public record. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). The Court may also consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss. *Pension Benefit Guar. Corp.*, 998 F.2d at 1196. The Court need not assume that the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 & n.13 (3d Cir. 1998), or credit a complaint's "'bald assertions'" or "'legal conclusions,'" *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429–30 (3d Cir. 1997)).

**B.    Count I: Plaintiff's Fourth Amendment Warrantless Search Claim**

Count I of Plaintiff's SAC claims Defendant violated her Fourth Amendment rights under 42 U.S.C. § 1983 by conducting a warrantless search of her property pursuant to a Township policy, practice, custom, or procedure. (SAC ¶¶ 30-31, Doc. 21.) This Court already dismissed Plaintiff's Fourth Amendment claims with prejudice. (*See* Order Granting Def.'s Mot. to Dismiss, Doc. 20.) Plaintiff acknowledged that this Court already dismissed her Fourth Amendment claims with prejudice. (*See* Pl.'s Br. in Opp'n 1 n.1.) Consequently, Defendant's Motion to Dismiss Count I of Plaintiff's SAC will be GRANTED.

**C.    Count II: Plaintiff's Fourth Amendment Seizure and Takings Clause Claims**

Count II of Plaintiff's SAC seeks relief under 42 U.S.C. § 1983, asserting that Defendant seized Plaintiff's property in violation of the Fourth Amendment and executed an uncompensated physical invasion taking in violation of the Fifth and Fourteenth Amendments. For the reasons detailed above, Plaintiff's Fourth Amendment seizure claim has already been dismissed with prejudice. (*See* Order Granting Def.'s Mot. to Dismiss, Doc. 20.) Accordingly, Defendant's Motion to Dismiss Plaintiff's Fourth Amendment seizure claim will be GRANTED.

For the reasons detailed below, Plaintiff's facial and as-applied takings claims will be dismissed without prejudice because Plaintiff failed to exhaust available state law remedies.

The Takings Clause of the Fifth Amendment, applicable to the states via the Fourteenth Amendment, prohibits the government from taking private property for public use without providing just compensation. *See Am. Express Travel Related Servs., Inc. v. Sidamon-Eristoff*, 669 F.3d 359, 370 (3d Cir. 2012). "To state a takings claim, Plaintiff must prove that (i) private property (ii) has been taken for (iii) public use (iv) without just compensation." *Unix Sys. Labs., Inc. v. Berkeley Software Design, Inc.*, 832 F. Supp. 790, 804 (D.N.J. 1993). Takings claims generally fall into two categories: physical and regulatory. *See Yee v. City of Escondito*, 503 U.S. 519, 522-23 (1982). Because Plaintiff's SAC alleges a physical invasion taking, (SAC ¶ 36, Doc. 21), this Court need not review the elements of a regulatory taking. A physical invasion taking occurs when there is either a condemnation or a physical appropriation of property. *See Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 322 (2002). An ordinance therefore amounts to a physical invasion taking in violation of the Takings Clause "where government requires an owner to suffer a permanent physical invasion of her property" and fails to provide just compensation. *Lingle v. Chevron U.S.A. Inc.*, 544

8

U.S. 528, 538 (2005) (internal citations omitted); *see also Nollan v. Cal. Coastal Comm'n*, 483 U.S. 825, 831-32 (1987) (holding that a physical invasion taking occurs when "individuals are given a permanent and continuous right to pass to and fro, so that the real property may continuously be traversed, even though no particular individual is permitted to station himself permanently upon the premises").

### 1. *Williamson County* Ripeness Requirements

But before a federal court may address the merits of a Takings Clause claim, plaintiffs generally must satisfy unique ripeness requirements. *See Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 186, 194-95 (1985). As this Court previously explained, the Takings Clause inquiry depends on whether a plaintiff asserts a facial or as-applied challenge. An as-applied challenge generally is not ripe until two prerequisites are satisfied: "(1) 'the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue' (the 'finality rule'), and (2) the plaintiff has unsuccessfully exhausted the state's procedures for seeking 'just compensation,' so long as the procedures provided by the state were adequate." *Cty. Concrete Corp. v. Town of Roxbury*, 442 F.3d 159, 164 (3d Cir. 2006) (citing *Williamson Cty.*, 473 U.S. at 186, 194–95 (1985)).

Unlike an as-applied challenge, a facial challenge brought under the Takings Clause need not satisfy the "finality rule." *See Cty. Concrete Corp.*, 442 F.3d at 168. However, plaintiffs asserting a facial challenge still must satisfy *Williamson County*'s "exhaustion" requirement and "seek just compensation from the state before claiming that their right to just compensation under the Fifth Amendment has been violated," so long as adequate state procedures exist. *Id.*; *see also Cowell v. Palmer Twp.*, 263 F.3d

286, 290-91 (3d Cir. 2001) (holding that Pennsylvania state law provides an adequate procedure for aggrieved parties seeking just compensation for an alleged taking). In accordance with the *Williamson County* ripeness test, this Court is unable to reach the merits of Plaintiff's SAC at this time because Plaintiff has failed to satisfy the state procedure exhaustion requirement. Therefore, as detailed below, Plaintiff's claim is not ripe for federal review and will be dismissed without prejudice.

> **2.     Plaintiff's Facial Challenge Does Not Satisfy the *Williamson County* Exhaustion Requirement**

Plaintiff mounts both a facial and as-applied challenge to Defendant's Cemetery Ordinance, alleging that the Ordinance constitutes a physical invasion taking without just compensation in violation of the Fifth and Fourteenth Amendments. (SAC ¶ 36, Doc. 21.) Specifically, Plaintiff alleges that the Cemetery Ordinance constitutes a facial violation of the Takings Clause in two ways: (1) by authorizing the Township's agents to enter private land to determine whether a cemetery exists on that property (the "government access provision"); and (2) by authorizing the general public to enter all land subject to the Cemetery Ordinance (the "public access provision"). (*See* Pl.'s Br. in Opp'n 7,11, Doc. 26.) Plaintiff asserts a physical taking, not a regulatory taking. (SAC ¶ 36.) Therefore, contrary to much of Defendant's Reply Brief, this Takings Clause inquiry does not turn on whether the challenged Ordinance deprives Plaintiff of "all economically beneficial use" of the property. *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 538 (2005). Rather, the question is whether a "'permanent physical occupation' of the property, by the government itself or by others," has occurred. *Nollan v. Cal. Coastal Comm'n*, 483 U.S. 825, 831-32 (1987) (quoting *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 434-35 (1982)).

However, irrespective of whether Plaintiff states plausible grounds for a physical invasion taking of her property without just compensation, this Court is unable to reach the merits of Plaintiff's claim because Plaintiff failed to satisfy the *Williamson County* exhaustion requirement. The Third Circuit has clearly ruled that plaintiffs asserting either a facial or as-applied Just Compensation claim against a state or local government in federal court have a "duty to seek compensation from the state before claiming that their right to just compensation under the Fifth Amendment has been violated," so long as adequate state procedures exist for pursuing just compensation. *Cty. Concrete Corp. v. Town of Roxbury*, 442 F.3d 159, 168 (3d Cir. 2006); *see also Sinclair Oil Corp. v. Cty. of Santa Barbara*, 96 F.3d 401, 406 (9th Cir. 1996) ("Thus, even if a zoning ordinance, on its face, 'takes' property for Fifth Amendment purposes, no constitutional violation occurs until the state refuses to justly compensate the property owner. Indeed, we have found that landowners who assert their property has been *physically* taken must first seek compensation from the state before turning to a federal forum.") (emphasis in original); *Unix Sys. Labs., Inc. v. Berkeley Software Design, Inc.*, 832 F. Supp. 790, 806 (D.N.J. 1993) ("[U]ntil a plaintiff has sought just compensation, there is no case or controversy. 'Where just compensation is available, a taking is not unconstitutional.' Thus, until a plaintiff has availed itself of a state's 'adequate process for obtaining compensation,' the plaintiff has suffered no harm and has no federal cause of action.") (citations omitted).

Pennsylvania state law provides for a process "through which a landowner may seek just compensation for the taking of property." *Cowell v. Palmer Twp.*, 263 F.3d 286, 290 (3d Cir. 2001) (citing Pennsylvania's Eminent Domain Code); *see also Gould v. Council of Bristol Borough*, 2014 WL 296944, at *7 (E.D. Pa. Jan. 27, 2014) (holding that plaintiff could not pursue a Takings Clause claim until he first pursued the state law remedy contained in Pennsylvania's Eminent Domain Code); *cf. Kruse v. Vill. of Chagrin*

*Falls*, 74 F.3d 694 (6th Cir. 1996) (permitting relief in federal court because, *inter alia*, state law failed to provide an adequate procedure for securing just compensation). The Third Circuit has concluded that the just compensation procedure contained in Pennsylvania's Eminent Domain Code is constitutionally adequate. *See Cowell*, 263 F.3d at 290; *Tripodi v. N. Coventry Twp.*, 2013 WL 4034372, at *9 (E.D. Pa. Aug. 8, 2013) ("The Third Circuit Court of Appeals has deemed exhaustion of these [Pennsylvania state law] procedures a prerequisite to filing a federal claim alleging a taking without just compensation.") (citing *Cowell*). Accordingly, Plaintiff is required to first exhaust the available state procedure for obtaining just compensation before her claim may be heard in federal court.[2]

Because Pennsylvania law provides aggrieved parties with an adequate procedure for obtaining just compensation, Plaintiff's takings claims are ripe for review in federal court only if she first attempts to avail herself of the state's just compensation determination process. However, Plaintiff has not pursued the state's procedures for obtaining just compensation. Although Plaintiff did file a state court action prior to her

---

[2] Plaintiff brought her Takings Clause claims under 42 U.S.C. § 1983, which generally does not require a plaintiff to exhaust administrative remedies before bringing suit. *See Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 192 (1985) (citing *Patsy v. Fla. Bd. of Regents*, 457 U.S. 496 (1982)). However, the Third Circuit has explained that "the second prong of *Williamson*' s ripeness test merely addresses a unique aspect of Just Compensation Takings claims," and is not a "true 'exhaustion of state remedies' requirement." *Cty. Concrete Corp.*, 442 F.3d at 168. Accordingly, asserting a Takings Clause claim under § 1983 does not circumvent the need to satisfy the second prong of *Williamson County*'s ripeness test.

current federal lawsuit, the state court action did not petition the court to initiate the process for ascertaining and awarding just compensation per the Pennsylvania Eminent Domain Code. *See* 26 PA. CONS. STAT. ANN. §§ 101-1106. Specifically, Plaintiff's state court claims never requested "the appointment of viewers to ascertain just compensation," *id.* § 502(6), and the record does not show any state court order granting or denying Plaintiff's petition for the appointment of viewers, *see id.* §§ 502(c)(1)-(2). Although Plaintiff's original state court complaint generally alleged a takings claim (among other claims), nothing in the record demonstrates, and Plaintiff does not contend in her SAC, that she first pursued the available state law just compensation recourse before turning to the federal courts. *Cf., e.g.*, *In re Property Along Pine Road in Early Twp.*, 743 A.2d 990 (Pa. Commonw. 1999) (plaintiffs alleging an uncompensated taking specifically requested the appointment of viewers, per the Pennsylvania Eminent Domain Code); *Gross v. City of Pittsburgh*, 741 A.2d 234 (Pa. Commonw. 1999) (same). Because both a facial and as-applied Takings Clause claim does not present a "case or controversy" unless and until a "plaintiff has sought and been denied just compensation," the federal court system is unable to address Ms. Knick's takings claim until she first attempts to secure just compensation from the state via Pennsylvania's Eminent Domain Code. *See Unix Sys. Labs., Inc. v. Berkeley Software Design, Inc.*, 832 F. Supp. 790, 806 (D.N.J. 1993); *id.* at 807 ("Plaintiff's takings claim will not be ripe until Plaintiff has sought just compensation in state court."). Accordingly, Defendant's Motion to Dismiss Count II of Plaintiff's SAC will be GRANTED because the takings claims are not ripe for review in federal court. Plaintiff's Fifth and Fourteenth Amendment claims will be dismissed without prejudice.

**D.     Count III: Plaintiff's Request for a Declaratory Judgment and Injunctive Relief**

Count III of Plaintiff's SAC requests a declaratory judgment declaring the Cemetery Ordinance unconstitutional, as well as a temporary restraining order and preliminary and permanent injunctive relief prohibiting Defendant from enforcing the Ordinance. (SAC ¶¶ 45-53, Doc. 21.). This Court previously denied Plaintiff's request for this particular relief. (*See* Order Granting Def.'s Mot. to Dismiss, Doc. 20.) Because the takings claims now before the Court are not ripe for review, this Court will decline to issue declaratory and/or injunctive relief. *See Carteret Sav. Bank, F.A. v. Office of Thrift Supervision*, 963 F.2d 567, 582-84 (3d Cir. 1992) (concluding that a plaintiff generally cannot receive equitable relief for a takings claim so long as an adequate procedure exists for awarding just compensation); *Unix Sys. Labs., Inc. v. Berkeley Software Design, Inc.*, 832 F. Supp. 790, 806 (D.N.J. 1993) ("[T]he federal takings cases and *Williamson* teach that a plaintiff cannot bring a takings claim in federal district court, *whether for injunctive relief or damages*, until the plaintiff has sought and been denied just compensation . . . . [U]ntil a plaintiff has sought just compensation, *there is no case or controversy*.") (emphases added); *CBS Outdoor Inc. v. N.J. Transit Corp.*, 2007 WL 2509633, *12 (D.N.J. Aug. 30, 2007) ("Plaintiffs cannot avoid *Williamson*'s exhaustion of state procedures requirement by declining to categorize their claims as ones for just compensation. The Takings Clause primarily concerns itself with ensuring just compensation and is not violated until just compensation is denied. Plaintiffs also cannot utilize the Declaratory Judgment Act to backdoor their takings claim into federal court without first complying with the Supreme Court's directives and utilizing state compensatory procedures."). Accordingly, Defendant's Motion to Dismiss Count III of Plaintiff's SAC will be GRANTED. Plaintiff's claims in Count III will be dismissed without prejudice.

### III. Conclusion

For the above stated reasons, Plaintiff's Fourth Amendment claims against Defendant contained in Counts I and II will be DISMISSED with prejudice. Plaintiff's takings claims under the Fifth and Fourteenth Amendments contained in Count II will be DISMISSED without prejudice. Plaintiff must first attempt to avail herself of Pennsylvania's just compensation procedures before she may re-file these takings claims in federal court. Plaintiff's claims for declaratory and injunctive relief contained in Count III will be DISMISSED without prejudice..

An appropriate order follows.


September 7, 2016                                        /s/ A. Richard Caputo
Date                                                             A. Richard Caputo
                                                                 United States District Judge